UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------

JEFFREY SPINNER, BILL POMPLIANO,
& SAMANTHA SCHWARTZ,                          Civil Action No: 20-CV-6288(JS)(AYS)
                *Plaintiffs* & Purported
                Class Representatives,

   -against-

                                                                SECOND AMENDED
NEW ERA RELOCATION LLC, MOVING                         VERIFIED
SOLUTIONS LLC, GOLD STANDARD                    CLASS ACTION CIVIL
RELOCATION, MEDE KARIMOV A/K/A          COMPLAINT WITH INJUNCTIVE
MEDETBEK KARIMOV, THOMAS GALCZYNSKI,     & DECLARATORY RELIEF
JENNIFER BLAKE, SAMMI "DOE",
RYAN F "DOE", RELOCATE US
LLC and MARGARET BOVARD DRAYTON
a//k/a MAGGIE DRAYTON,                            JURY TRIAL DEMANDED
                          *Defendants.*
_____

   Plaintiffs and purported class representatives, Jeffrey Spinner, Bill Pompliano, and Samantha Schwartz complain as follows:

**INTRODUCTION**

   This action seeks damages, injunctive and declaratory relief on behalf of a class of all persons who hired Defendants for their interstate moves during 2018 to present. Through a common and uniform course of conduct, Defendants knew or should have known t that they did not intend to honor their obligations under federal laws and the contracts they procured from customers. The purpose of this action is to hold Defendants and all those involved accountable for the maximum legal and equitable relief for defrauding the consuming public.

   The facts show Defendants engage in a scheme where once they load onto their trucks customers valuable household goods, cherished family heirlooms and other property then they hold it hostage for cash ransoms of tens of thousands of dollars more. Defendant GOLD STANDARD then actively engages itself acts as if it is intervening to find the property, but later denies liability after inducing consumers into contracts with them and taking their money.

   This action involves the Carmack Amendment, 49 U.S.C. §14706, which imposes strict liability upon common carriers for damages to goods in transit, among other causes of action, including deceptive business practices. GOLD STANDARD denies liability.  However, state corporate and DOT records show Defendants are all united, operated by Defendant Maggie

1

Drayton, the mastermind and owner of numerous fictitious LLCs that connect Defendants as one operation using the same addresses in Florida.

## PARTIES

1. At all times mentioned herein, Plaintiff Jeffrey Spinner is an individual and natural person domiciled in Suffolk County, New York. Because of his status as a retired New York Supreme Court judge, his home address and cell number are redacted in this complaint and exhibits.

2. At all times mentioned herein, Plaintiff Bill Pompliano is an individual and natural person domiciled in North Carolina.

3. At all times mentioned herein, Plaintiff Samantha Schwartz is an individual and natural person domiciled in Michigan.

4. Defendant NEW ERA RELOCATION LLC ("NEW ERA") was a North Carolina limited liability company conducting business in the State of New York, listing on its contract, corporate documents and website a headquarters at "111 North 3rd Street, Smithfield NC 27577" and uses the address "933 Beville Road, South Daytona, Volusia County, Florida" in documents filed with the Florida secretary of State.

5. Defendant NEW ERA operated a common carrier business, as defined by the Carmack Amendment, under US DOT number of 3371822, which was revoked December 22, 2020.

6. Defendant MOVING SOLUTIONS LLC is the legal name and owner of Defendant GOLD STANDARD, a limited liability company organized under and existing by virtue of the laws of Florida, and does business under the name of Defendant GOLD STANDARD RELOCATION (collectively, "GOLD STANDARD") at a business address listed with the DOT of "933 Beville Rd unit 101 h South Daytona FL 32119"—the same address listed for NEW ERA. GOLD STANDARD operates as a common carrier and/or broker operating, managing and holding Defendant NEW ERA as its wholly owned subsidiary.

7. Defendant RELOCATE US LLC ("RELOCATE") is a limited liability company organized under and existing by virtue of the laws of Florida, with a purported office for the transaction of business at 933 Beville Road, South Daytona, Volusia County, Florida "—the same address listed for NEW ERA and GOLD STAR. RELOCATE owns and operates Defendants NEW ERA and GOLD STAR.

8. Defendants MEDE KARIMOV a/k/a Medetbek Karimov with, upon information and belief, an address at 33 Diamante, Irvine, California 92620, cell phone 202-300-9630 and presently using an e-mail of KGVanlines@gmail.com, THOMAS GALCZYNSKI, JENNIFER BLAKE, SAMMI "Doe" and RYAN F "Doe" are natural persons actively involved as principals,

officers, agents, servants or employees of Defendants NEW ERA and GOLD STANDARD RELOCATION, LLC.

9. Defendant MARGARET BOVARD DRAYTON a/k/a MAGGIE DRAYTON ("DRAYTON") is a natural person who, upon information and belief, is domiciled in Florida at 1490 James Street, New Smyrna Beach, Volusia County.

10. Defendant DRAYTON dominates, manages and controls and is a principal, owner, member and/or manager of Defendants NEW ERA, GOLD STANDARD and RELOCATE.

11. Defendants NEW ERA, GOLD STANDARD and RELOCATE (collectively, the "LLC Defendants") are persons and/or companies engaged in the field of interstate moving and storage and (a) share common officers, managers, members, principals and employees and (b) utilize common business addresses and telephone numbers, making them so closely related and inextricably intertwined as to be completely indistinguishable from one another, both factually and legally, so that each one is the alter ego of the other and the actions, acts and omissions of each are wholly binding upon and completely attributable to each of the others and their individual owners and agents.

12. Each of the above named Defendants, including the individuals, jointly and severally procure carrier contracts in their ongoing scheme of conversion, theft, extortion and concealment of consumer property. Upon information and belief, Defendants are not domiciles of New York. Each reference herein to "Defendants" shall be deemed to refer to and include each of the said individual and LLC Defendants, acting jointly and severally.

**JURISDICTION AND VENUE**

13. The Court has "federal question" subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §1331, as the claim set forth herein arises under federal statute 49 U.S.C. §14706 (the "Carmack Amendment").

14. More than 100 putative class members exist and the amount in controversy by any one plaintiff is not less than $25, nor less than $50,000 of the aggregate of all claims. At least one named Plaintiff is diverse from all defendants as Plaintiff Spinner is a citizen of a state different from Defendants. 15 U.S.C.A. §2310(d)(3).

15. Pursuant to the Class Action Fairness Act ("CAFA"), the aggregate claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and inclusive of punitive damages, treble damages and attorney's fees as permitted in the New Jersey Consumer Fraud Act and other laws alleged herein. This is a class action in which many proposed plaintiff class members are citizens of different states from Defendant.

16.     Jurisdiction is further invoked pursuant to 28 USC Section 1332 as diversity exists between the Plaintiff and each Defendant, and the amount in controversy exceeds $ 75,000.00, exclusive of interest and costs.

17.     Jurisdiction over the pendent state claims exists under 28 U.S.C. §1367(a) as they are part of the same case and controversy.

18.     Declaratory relief is available under 28 U.S.C. §§2201 and 2202.

19.     Venue is proper in this district under 28 U.S.C. §1391(b)(2) and (d) because a substantial part of the events or omissions giving rise to the claims and injuries at issue occurred in this district, including Plaintiff Spinner's contract was executed here, Defendants' websites and e-mails procure business here, their websites affirm they regularly conduct and transact business in this district and Plaintiff Spinner obtained an injunction in this acse against Defendants Gold Standard and New Era in this venue that shows they are more likely one and the same operation.

20.     C.P.L.R. §§301 and 302 also subjects Defendants to personal jurisdiction within this state, and the causes of action set forth herein arose out of Defendants' transactions with Plaintiff within the State of New York.

21.     At all times mentioned herein, Defendants' websites at https://goldstandardrelocation.com and https://newerarelollc.com were operational in New York and used by New York citizens.

**FACTS**

     **Plaintiff Spinner**

22.     On or about July 17, 2020, Defendant GOLD STANDARD, acting through Defendant RYAN, communicated via internet and telephone to Plaintiff to provide a quote for packing and transporting an interstate move of 3,200 cubic feet of household goods and furnishings from Union County, North Carolina to Suffolk County, New York.

23.     During those communications, Plaintiff specifically asked if GOLD STANDARD was the mover and not a broker, and Defendant RYAN responded by affirmatively and repeatedly representing to Plaintiff that GOLD STANDARD was not a broker, but that it was a licensed interstate mover and that its moving and transportation services were provided through NEW ERA, which, he repeatedly represented was GOLD STANDARD'S wholly owned subsidiary.

24.     On July 17 and 29, 2020, RYAN emailed via the internet to Plaintiff's computer in Suffolk County a written "Binding Moving Estimate" of GOLD STANDARD with NEW ERA's logo at top, for the interstate move of 3,200 cubic feet of Plaintiff's household goods (**Exhibits A & B**).[1]

---

[1] This and all exhibits referenced herein and attached hereto and all of their content is made a part hereof as if fully set forth herein.

25. Consistent with RYAN repeatedly affirming to Plaintiff that GOLD STANDARD and NEW ERA were the same company, page 1 of those documents have NEW ERA's logo at the top, the top left of the first pages, page 9 and the last page all list RYAN as NEW ERA's "Customer Rep", "Representative" and "logistics manager", Ryan lists his email at "goldstandardrelocation.com" showing NEW ERA is its subsidiary and NEW ERA's website is listed on those documents.

26. Those documents, paragraph 5, further confirm that Defendants are the same as the fee for "moving coordinator services" provided by Defendant NEW ERA is, upon information and belief, shared with GOLD STAR.

27. Nowhere do those Contracts state GOLD STANDARD is a broker.

28. Plaintiff was induced to and did believe the entire time that he was dealing with GOLD STANDARD that owned and operated NEW ERA, and based on those representations he executed a binding contract for his move and paid $9,417 as a deposit for his move.

29. The July 20 binding estimate was for $14,423.34, with the following material terms:
    - page 2 guarantees the contract price for 3,200 cubic feet of goods until the moving date;
    -"fully quilted and wrapping" of the goods;
    - "30 days of FREE climate controlled storage in" a secured storage facility;
    - remaining balance by "cash or postal money order"
    - at page 6, Customer elected a binding price not to exceed the estimate (**Exh B**).

30. Page 9 of the July 20 contract, entitled "Articles List 80 Items, 248 Pieces", lists Plaintiff's property, including antiques and irreplaceable family heirlooms from the holocaust, such as a "Clock, Grandfather", "Physician's Scale", "Secretary Desk, Antique", and "antique dining room table/chairs/hutch".

31. Between July 17 and 29, 2020, Plaintiff paid a contract deposit of $4,917.00 for moving and transportation services by GOLD STANDARD and NEW ERA.

32. On or about July 30 through August 2, 2020, Defendant GALCZYNSKI, acting on behalf of the LLC Defendants, managed, controlled and oversaw the packing and loading of Plaintiff's goods at Union County, North Carolina into a Freightliner Columbia tractor bearing West Virginia license 928-977. Attached was a 53 foot Wabash National Box Trailer marked "#9001 Javier Marquez," bearing VIN 1JJV532D9EL803329 and a California license of 4MS1277. The trailer's total interior volume was 3,270 cubic feet.

33.   On August 2, 2020, the tractor departed with the goods and, in accordance with the Contract, Plaintiff paid an additional $4,500.00 to Defendant GALCZYNSKI, who accepted it on behalf of the LLC Defendants.

34.   On December 4, 2020, Plaintiff e-mailed and telephoned Defendant NEW ERA to arrange for delivery of his household goods to his new residence in New York.   As of December 4, 2020, according to the Contract, the balance due was $ 9,300.00, comprising $4,500.00 for moving and $4,800.00 for storage in a climate-controlled warehouse.

35.    On or about December 4, 2020, Defendant SAMMI, acting on behalf of the LLC Defendants, informed Plaintiff that the balance increased to $10,542.00 by falsely claiming his property was 4,200 cubic feet, and not 3,200 cubic feet. However, that is impossible when the trailer used had a maximum load of 3,270 cubic feet, as alleged in paragraph 26 above.

36.   Next, on or about December 19, 2020, Defendants texted Plaintiff from "Jorge" demanding $6,282.00 more in cash, totaling $15,582.00 **in cash** as opposed to the $9,300.00 binding price.

37.   Plaintiff objected and demanded a Bill of Lading mandated by 49 CFR §375.505. Defendants emailed one listing Plaintiff as "Jerry" instead of "Jeffrey" and forged his signature at the bottom with a squiggly line when Plaintiff never signed that (**Exhibit C**).

38.   A layperson can see the signatures of Defendants' customer representative and the one purporting to be Plaintiff's as the "Customer" at the bottom of that Bill of Lading are signed by the same person who signed at the "Customer Representative" line.

39.    That forged document also has three different dates.  At the top right is July 31, 2020, yet bottom left signature blocks" and the bottom right block as "Delivery Acknowledgement" are predated "7/3/20, which is impossible as the goods were taken August 2, 2020. A Bill of Lading by law is signed at the time of departure, not before.

40.   Plaintiff next discovered that Defendants use fake addresses on their Federal DOT filings, State Corporate filings, their website and the Contract as "111 N. 3rd St. Smithfield NC 27577" as their "physical address" and actual corporate headquarters.  A Google Map search shows that address is a corner store that ships mail, not a corporate location (**Exhibit D**).

41.   Defendant NEW ERA's fake address is also listed as its "principal office" on its state corporate filings and their website as its "CORPORATE HEADQUARTERS" at https://www.newerarelo.com/our_trucks__teams  to deceive consumers as if a "principal office" exists when it does not (**Exhibit E**).

42. During those times in December, 2020 and thereafter that Defendants were conducting business with Plaintiff Spinner, and as later shown below with the other Plaintiffs, Defendant NEW ERA was "**not authorized**" by the DOT to conduct carrier business as of December 16, 2020 because it did not have any insurance as mandate by law (https://safer.fmcsa.dot.gov/query.asp?searchtype=ANY&query_type= queryCarrierSnapshot&query_param =USDOT&original_query_param=NAME&query_string=3371822&original_query_string=NEW%20ERA%20RELOCATION%20LLC ) (**Exhibit F**).

43. From December 4 through December 23, 2020, Plaintiff demanded by phone and emails that Defendants deliver his property to his home in Long Island New York, but they refused unless Plaintiff paid the cash ransom of $6,282.00.

44. On December 26, 2020, Plaintiff's counsel sent Defendants a 49 C.F.R. §370.3 letter notifying them of the damages, and requested the physical address of the property (**Exhibit G**).

45. Rather than respond to the letter, on December 28, 2020, at 3:58 p.m., a man called Plaintiff from a blocked number stating "This is Chris, GM at New Era. You've been fucking around with us for six months, I'm going to auction your stuff." Plaintiff requested that Chris call Plaintiff's lawyer and Chris' replied "I'm not speaking to no one", and Plaintiff hung up.

46. At 3:59 p.m. that day, that man called from a blocked number, leaving the following voicemail: "Supposed to pick up your stuff months ago, I'm going to go ahead and put your up, your stuff up for auction and we'll send you a letter. Have a nice day." (to hear that message, go to https://drive.google.com/file/d/1ROuv1PyDMfO0YYDZbwKTV1yygf6uwVe6/view?usp=sharing )

47. Next, Plaintiff filed this action and obtained preliminary injunctive relief to prevent the unlawful disposal of his goods "held hostage" for a $15,582.00 cash ransom.

48. After two Orders of this Court on December 30, 2020 and January 14, 2021, Plaintiff found his goods moldy, damaged and destroyed in a dirty trailer on the side of the road at Route 440 South, Bayonne, New Jersey.

49. As a direct and proximate result of Defendants illegal conduct, Plaintiff Spinner his irreplaceable antiques and other property, and paid legal fees and costs for this action.

**Plaintiff POMPLIANO**

50. Since Plaintiff Bill Pompliano son tragically died some three years ago, he kept his son's personal belongings to remember him. However, Defendants made the memory a nightmare by holding his son's property hostage for more cash then stealing it during the move.

51. Like Plaintiff Spinner, before Pompliano entered into a moving contract with Defendants he specifically asked GOLD STANDARD's representative Jim whether they were a broker because he did not want to deal with a broker. Jim responded that GOLD STANDARD was not a broker and they owned their own trucks.

52. Consistent with those representations, the binding contract and communications to Plaintiff contained both NEW ERA's and GOLD STANDARD's logos and were executed by GOLD STANDARD's employees to indicate to the consumer they were one and the same company.

53. Plaintiff was induced to and did believe the entire time that he was dealing with GOLD STANDARD that owned and operated NEW ERA, and based on those representations he paid over $16,000 for his move.

54. In fact, Plaintiff's October 29, 2020 "Binding Moving Estimate" listed "Jim" as the Customer Rep and listed a GOLD STANDARD's email address and a website for NEW ERA.

55. Also, from on or about September, 2020 to March, 2021, Defendants representatives, including Defendant JENNIFER BLAKE, at cell number of 941-417-4846, repeatedly communicated with Plaintiff by representing herself as the logistics coordinator for Defendant NEW ERA and also the manager of GOLD STANDARD, indicating they were the same company with the same employees.

56. On November 1, 2020, GOLD STANDARD and NEW ERA took Plaintiff's goods from Scottsdale Arizona to be delivered to North Carolina by the first week of December, 2020.

57. Once Defendants had the property, they commenced the same scheme of extortion as Plaintiff Spinner experienced, by holding the property hostage unless more cash was paid than the binding contract listed.

58. The scheme began December 25, 2020 when Defendants delivered some property, but refused to deliver anything more unless Plaintiff paid more cash.

59. Defendants put Plaintiff to task of making numerous complaints to exhaust and wear him down the entire time they refused to return his goods.

60. Months later, on February 17, 2021, Defendant BLAKE, acting as manager for Defendant GOLD STANDARD, e-mailed Plaintiff stating she is the "customer service for New Era Relocation, and New Era is actually shut down at this time", and refused any more information.

61. On February 26, 2021, Defendants sent a driver named Abdul to Plaintiff's North Carolina home to demand $1,000 cash above the binding contracted rate.

62. After threats by the driver to collect $1,000, Plaintiff paid $500 in cash under duress and coercion to have Abdul unload the property. An inventory revealed missing property, including that belonging to Plaintiff's deceased son, a piano, a custom table, a flat screen TV, dressers, electronics and other valuable items, and what was delivered was damaged beyond repair.

63. After Plaintiff complained to Defendants GOLD STANDARD and NEW ERA about the stolen and damaged goods, on March 19, 2021 Defendant BLAKE emailed that he should file an insurance claim to "Angie Marrara, Commercial Auto Underwriting, 380 Sentury Parkway, PO Box 3031, Blue Bell, PA US 19422 Telephone: (610) 397-5000".

64. Some time after March 19, 2021, the insurance company representative named Paul informed Plaintiff that there was no compensation because Defendants' policy was cancelled after numerous similar complaints of ransoms and thefts against them.

65. As a direct and proximate result of Defendants illegal conduct, Plaintiff paid legal fees and costs, lost their deceased son's irreplaceable property that Defendants damaged and stole, including Defendants stole Plaintiff's flat screen TV and electronics.

**Plaintiff Schwartz**

66. In December, 2020 Plaintiff SAMANTHA SCHWARTZ received communications from Dawn Harrington of Defendant GOLD STANDARD after Plaintiff searched a general website requesting universal quotes.

67. Harrington continually called Plaintiff, introducing GOLD STANDARD as "the second best full service moving company in the country and would give her the best price".

68. Once Harrington made clear that Defendant GOLD STANDARD was a mover with their own trucks, then Plaintiff entered into a contract and paid fees to move her property from Los Angeles to Michigan. Part of that property included her deceased father's belongings.

69. Plaintiff paid $706.48 to GOLD STANDARD by credit card for a December 20, 2020 move.

70. On December 20, 2020, a truck took her goods after she paid another $850 and $90 in cash to Defendants. Although Defendant GOLD STANDARD's contract promised delivery by December 23, 2020 to Michigan, they withheld her property for over three months, stole most of it and delivered what was left damaged.

71. First, on January 30 at 6 PM they delivered only some of her property and demanded cash of $850 despite that the move was missing most of her property.

72.   After Plaintiff complained to GOLD STANDARD, on February 1, 2021 Defendant JENNIFER BLAKE requested a list of the missing items and assured they would return it.

73.   On March 10, 2021, Defendant GOLD STANDARD sent a second truck, they took another $30 in cash, which Plaintiff's property was returned damaged and most of it missing when unloaded, which she highlighted in an inventory she sent to GOLD STANDARD (**Exhibit H**).

74.   GOLD STANDARD refuses to return her missing property or compensate her for damages.

75.   As a direct and proximate result of Defendants illegal conduct, Plaintiff paid legal fees and costs, lost her deceased father's irreplaceable property that Defendants damaged and stole, including Defendants stole Plaintiff's flat screen TV and other property.

### THE CONNECTION SHOWING DEFENDANTS OPERATE AS ONE

76.   At a January 13, 2021 hearing leading to the TRO of January 14, Defendant GOLD STANDARD's counsel repeatedly denied that GOLD STANDARD was related to NEW ERA (**Exhibit I**-transcript), despite Plaintiff's counsel producing documents showing they are related by Defendant MARGARET DRAYTON filing LLCs as their owner and operator (**Exhibit J**).

77.   Remarkably, GOLD STANDARD's counsel later filed a January 21, 2021 Answer (Dkt 19) signed by Defendant MARGARET DRAYTON affirming that she is "the owner of Moving Solutions LLC, d/b/a Gold Standard Relocations".

78.   According to corporate documents filed with the Florida secretary by Defendant DRAYTON, the LLC Defendants are one and the same company using the same address at "93 Beville Rd" and all owned by DRAYTON.   As well, all Plaintiffs herein affirm that Defendant GOLD STANDARD specifically states they are not a broker but are a mover with their own trucks, which they stated Defendant NEW ERA was their wholly owned subsidiary.

79.   In fact, on May 28, 2020, DRAYTON filed a name registration for Defendant NEW ERA, listing its owner as Defendant RELOCATE US at the same Beville Road address.

80.   Despite the DOT revoking Defendant NEW ERA's license on December 16, 2020, Defendants continued to procure contracts from consumers' and move their property nationwide and extort them for cash, and whether the ransom was paid or not, they continued to steal and damage consumer property.  They also continued to provide "customer service" for the moving trucks they represented were their own.

81.   There are 19 other similar complaints to the Better Business Bureau, as recent as February, 2021, and more complaints before the initial complaint in this action was filed, describing how

Defendants "lied", are "scamming" and holding "hostage" consumers' property and demanding cash never agreed to https://www.bbb.org/us/nc/smithfield/profile/moving-companies/new-era-relocation-0593-90326232/complaints (**Exhibit K**).

## CLASS ALLEGATION

82. Upon information and belief, for years Defendants customarily held themselves out as a mover with their own trucks when asked to induce consumers to enter into moving contracts with them that Defendants would not honor.

83. Plaintiffs bring this action on behalf of themselves and a class of persons initially defined as follows, and based upon a three (3) year statute of limitations under the GBL:

> For the period of three years before December, 2020, being December, 2017 through December, 2020 when this complaint was initially filed, all those consumers who entered into a contract with Defendant GOLD STANDARD after being led to believe they were the moving company and later GOLD STANDARD denied liability for those consumers' property damage during the move by claiming they are only brokers

84. Excluded from the Class are Defendants and any affiliate, parent, or subsidiary, any entity in which Defendants have a controlling interest, any officer, director, employee, successor or assign of Defendants, anyone employed by counsel for Plaintiffs in this action, and any Judge to whom this case is assigned as well as his or her immediate family and staff.

85. The applicable criteria of Federal Rule of Civil Procedure Rule 23 are as follows:

Numerosity. Members of the Class are so numerous that their individual joinder herein is impracticable because it is composed of thousands of consumers geographically dispersed throughout New York and the United States. Numerosity is based upon the fact that there are over 40 complaints listed with the DOT and BBB about these Defendants, which common-sense dictates that number can be doubled or tripled as many consumers simply pay the ransom and do not realize they have rights under the law or a forum to complain to. Thus, the number of class members is more than the at least 50 needed. Also, the Class is ascertainable and identifiable because the precise number of members of the Class can be ascertained through discovery of Defendants' sales, service, maintenance and complaint records, among other discovery to the DOT and local BBB bureaus, among other things..

Common questions. Common questions of law and fact exist as to all members of the putative Class and predominate over questions affecting only individual Class members. Those common questions include:

  a. Whether Defendants violated the Carmack Amendment, as alleged in this complaint by convincing consumers they were a moving company and loading their property onto their trucks to be stolen and damaged, while Defendants and their subsidiaries, agents and employees misled

11

consumers that they were resolving the damage when they were not, and did not intend to be liable, while they collected and received fees form the consumers.

b.  Whether Plaintiffs and the other putative Class members are entitled to equitable relief, including but not limited to restitution or a preliminary and/or permanent injunction, and

c.  Whether Plaintiff and the other Class members are entitled to damages and other monetary relief, including a one-time uniform payment representing the average damage amount of all claims.

Typicality. Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiffs were induced into entering into moving contracts by Defendants holding themselves out as movers.

Adequacy. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent, and they and their counsel will fairly and adequately represent the interests of the Class.  Plaintiffs have retained counsel competent and experienced in complex class action litigation to prosecute this action vigorously.

Superiority. The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible as, upon information and belief, each member expended on average about $7,000.00 for their moves.  Class members of moving scams can not afford to sue such defendants as, for one thing, lawyers are not willing to take their cases since their total hours and fees for such actions are more than what may be recoverable and contingency arrangements are not worth these cases as single cases are not worth the amount of time nor can consumers afford to pay attorneys hourly as the time outweighs the damages. Even if Class members themselves could afford such individualized litigation, the court system could not.  In addition to the burden and expense of managing a myriad of actions, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system as presented by legal and factual issues of each case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court.

86. Alternatively, the Class may be certified because:

a. the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede Plaintiffs' ability to protect their interests; and

c. Defendants acted or refused to act on grounds generally applicable to the Class, for instance refusing to comply with Federal interstate moving laws, particularly the Carmack Amendment; thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

*87.*     Class certification is also appropriate because Defendants acted or refused to act on grounds generally applicable to the Class, such as following the mandates of the Carmack Amendment and other applicable federal laws, thereby making appropriate declaratory and/or injunctive relief with respect to the claims of Plaintiff and the Class members.

**COUNT ONE: Carmack Amendment**

88.   Plaintiffs repeat each and every allegation above as though fully set forth herein.

89.   LLC Defendants, as carriers and brokers, and their agents and employees, had duties under the Carmack Amendment, 49 U.S.C. §14706 to properly and carefully to load, handle, stow, carry, keep, care for, discharge, and deliver the household goods carried in the same good order and condition as when tendered to and accepted and to provide a Bill of Lading.

90.   LLC Defendants assumed responsibility for, and were responsible for, the care and custody of the goods from the place of initial receipt to the place of intended delivery.

91.   LLC Defendants breached their duties under the Carmack Amendment by failing to properly and carefully to load, handle, stow, carry, keep, care for, discharge, and deliver the goods carried in the same good order and condition as when tendered and accepted, and have refused to deliver the goods.

92.   LLC Defendants breached their duties under the Carmack Amendment by failing to provide the location of the goods that they are holding hostage at some undisclosed address or provide any evidence that the goods are not physically damaged, nor provide Plaintiff the opportunity to survey the condition of the goods, and/or the take delivery of them or mitigate any damages.

93.   LLC Defendants breached their duties under the Carmack Amendment by affirming in a voicemail message of December 28, 2020 that they are auctioning Plaintiff's property for sale rather than deliver it to Plaintiff.

94.   LLC Defendants breached their duties under the Carmack Amendment by forging a Bill of Lading.

95.   By reason of the foregoing, Defendants were a receiving and/or delivering carrier and broker within the meaning of the Carmack Amendment, 49 U.S.C. §14706, and breached their duties under that statute and/or under the contract of carriage.

 96.   The Carmack Amendment holds all such carriers and owners of carriers liable, for which all individual Defendants, including Defendant Drayton are personally liable.

97. As a direct and proximate cause of all Defendants' breaches under the Carmack Amendment, Plaintiffs suffered damages over $100,000, which amount may be further determinable, and which was not the result of any contributing acts, omissions, negligence or breach of contract on the part of Plaintiff.

98. Defendants are jointly and severally liable for any and all damages for their violations of the Carmack Amendment, and the Carmack Amendment imposes strict liability for any breach.

**COUNT TWO: Disgorge Profits**

99. Plaintiffs repeat each and every allegation above as though fully set forth herein.

100. The unlawful conduct of all Defendants named herein constitutes deceptive, fraudulent and wrongful conduct.

101. By virtue of their wrongful conduct, all Defendants received money from Plaintiffs, profited from these illegal transactions and must return all such fees that rightfully belong to Plaintiffs, as their unlawful conduct warrants they disgorge all such monies, with interest thereon.

**COUNT THREE: GBL §349**

102. Plaintiffs repeat each and every allegation above as though fully set forth herein.

103. Defendants, specifically GOLD STANDARD and NEW ERA, operate a consumer-oriented business of interstate moving and brokering such moves.

104. All Defendants materially misled Plaintiffs by representing that Gold Standard was not a broker and continued to materially mislead Plaintiffs into believing they are a reputable company operating under Federal laws, abide by such laws and properly pack and store their property, including in climate-controlled facilities, pursuant to the Contract and laws, leading Plaintiffs to agree to and pay for those services that Defendants never intend to provide but will extort Plaintiffs for more cash as is their custom to hold property hostage and damage and steal the rest.

105. At all times relevant hereto, Defendants knew, or were willful in not knowing, that they were false and misleading in the manner referenced above. Indeed, Defendants have an established history of deceiving consumers the same way so they can gain control of their property then hold it hostage for cash ransoms as numerous BBB and DOT complaints confirm.

106. To further dupe consumers that Defendants are a legitimate business with an actual place of business as required by state and federal laws, Defendants list false addresses belonging to other stores as their "headquarters", when they do not have a physical headquarters, and in violation of 49 CFR sec 390.5 which mandates a "principal place of business".

107. As a direct and proximate result of Defendants' frauds, deceptions and deliberate violations of laws existing to protect consumers exactly from these frauds, Plaintiffs suffered the conversion and loss of their property for months, were subjected to extortion demands for cash and the bulk of their property was missing, damaged and destroyed beyond repair.

108. Plaintiffs incurred expenses, costs and attorney's fees to have to appear before this court and Plaintiff Spinner specifically initiated filing for and obtained two injunctions directing Defendants to return his property, one of which found, based upon the evidence provided, the likelihood that Defendants GOLD STANDARD and NEW ERA were the same operation.

109. Defendant's acts and practices are not unique to the parties. These acts and practices of Defendants to deceive consumers, deliberately confuse them as to the nature of their company relationships and hold property hostage for cash are consumer-oriented and have a broader impact on consumers at large as numerous similar complaints exist online, including at the BBB and DOT websites.

**COUNT FOUR:  Fraud**

110. Plaintiffs repeat each and every allegation above as though fully set forth herein.

111. Defendant GOLD STANDARD appeared before this court by its counsel at the January 13 hearing and then by a January 21, 2021 Verified Answer, filed at Docket 19, claiming it is only a broker and there is no recourse against them.

112. However, GOLD STANDARD's employees and agents specifically told each and every Plaintiff that they are the moving company.

113. Those are (a) a material, false representation, (b) made with the intent to defraud, (c) that was reasonably relied on by the plaintiffs to enter into contracts with Defendants, (4) thereby causing Plaintiffs damage as they did not want a broker and understood they were dealing directly with the mover; yet when their goods were held hostage, stolen and damaged, Defendants denied any liability despite being liable under federal laws.

114. Plaintiffs were damaged by paying tens of thousands of dollars for moving services by GOLD STANDARD that were false, fraudulent and deceptive, and meant to steal and damage their property.

**COUNT FIVE: Breach of Contract**

115. Plaintiffs repeat each and every allegation above as though fully set forth herein.

116. Plaintiffs entered into a binding Contract with Defendants, paid monetary consideration and Defendants took their property pursuant to its terms.

117. Defendants materially breached the Contract by not keeping their property safe or using a clean and climate-controlled storage unit, which are material terms of the Contract, holding their property hostage for cash not contracted for, and stealing and damaging their property.

118. As a direct and proximate result of the breaches, Plaintiffs have been damaged in the amount to be ascertained, but believed to be not less than $100,000.00.

**COUNT SIX: Negligence**

119. Plaintiffs repeat each and every allegation above as though fully set forth herein.

120. All Defendants, including NEW ERA and GOLD STANDARD, were under an absolute and non-delegable duty to exercise ordinary due and reasonable care in the packing, loading, securing, transportation, possession, storage and handling of the Plaintiffs' property so as to avoid damage and destruction thereto.

121. Defendants breached their duty to exercise reasonable care, which breach solely, directly and proximately resulted in the damage to and the destruction of the Plaintiffs' property.

122. As a proximate result of their negligence and lack of care by all Defendants, including NEW ERA and GOLD STANDARD and their principals, agents, servants and employees, and without any contribution thereto by Plaintiff, Plaintiffs property was damaged and destroyed in an amount of not less than $100,000.00.

**Permanent Injunction and Declaratory Relief**

123. Plaintiffs repeat each and every allegation above as though fully set forth herein.

124. USCS Fed Rules Civ Proc R 65 grants district courts the power to grant injunctions, which can be permanent, and declaratory relief is also permitted.

125. Plaintiffs and the consuming public suffer irreparable injury in the absence of an injunction and declaration that the LLC Defendants, including GOLD STANDARD and NEW ERA, are the same company and violated numerous DOT and Federal and state laws by using false addresses, switching names and LLC's, forging documents such as Plaintiff Spinner's Bill of Lading and deliberately confusing the public and the DOT as to who is a broker or carrier and which LLC is controlling the move by switching LLC names and creating new names to operate under once the DOT revokes an LLC's license, which an injunction to cease such conduct is needed.

126. Remedies at law, such as monetary damages, are inadequate to compensate for the injury because Defendants' misconduct leads to the loss of irreplaceable antiques and heirlooms that are not precisely quantifiable for Plaintiffs and consumers at large.

127. The balance of hardships tips in Plaintiffs and all consumers favor as undoubtedly no one can put a price on family heirlooms and antiques handed down from generations, and once

damaged, lost or stolen because of the frauds perpetrated by Defendants then they can never be replaced, which consumers use these Defendants to protect their goods, not steal them.

128. The public interest would not be disserved by the issuance of a permanent injunction mandating Defendants disclose their true identities to protect property as the public interest would be served to rid the nuisance that these Defendants create with their established history of holding consumers' household goods hostage for their own selfish pecuniary gain at the expense of innocent citizens who just want their household goods transported to their new homes without being victimized by Defendants' extortion.

129. Furthermore, Defendant GOLD STANDARD cannot escape liability as they take money from these transactions and they and NEW ERA are one and the same entity owned by Defendant MARGARET DRAYTON. Thus, a declaration and injunction about these companies and DRAYTON's involvement is also needed to protect the public from their shell game used to hold property hostage.

130. Also, the public has an interest in not being deceived by Defendants who steal people's properties under the guise of a government issued DOT license that does not exist, while GOLD STANDARD uses its DOT license to aid and abet the illegal conduct.

131. Defendants' activities as alleged herein warrant declaratory relief and a permanent injunction from their false and fraudulent activities in violation of state and federal law.

**DAMAGES**

*WHERFORE*, Plaintiffs on their own behalf and on behalf of the Class demand judgment against Defendants as follows:

A. An order certifying the Class and appointing Plaintiffs and their counsel to represent it;

B. An order declaring as unlawful the conduct alleged to be a deceptive sales practice and violations of the Carmack Amendment, as well as related federal laws, and enjoining Defendants from continuing to engage in unlawful business practices as alleged herein;

C. An order awarding Plaintiffs and the members of the Class restitution or other equitable relief as the Court deems proper, including, consequential damages;

D. An order awarding Plaintiffs and the members of the Class pre-judgment and post-judgment interest and treble damages and punitive damages in an amount not less than Five Million Dollars;

F. An Order requiring Defendant to provide notice to the Class under Rule 23;

G. An order awarding Plaintiffs and the members of the Class reasonable attorneys' fees and costs of suit, including expert witness fees;

H. An order and judgment awarding such other and further relief as this Court may deem just and proper and fair.

## TRIAL BY JURY IS DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all triable issues raised by this Complaint.

Dated: April 4, 2021

**LAW OFFICES OF SUSAN CHANA LASK**
/s Susan Chana Lask

**Susan Chana Lask, Esq.**
*Attorneys for Plaintiffs and the purported class*
244 Fifth Avenue, Suite 2369
New York, NY 10001
917-300-1958
scl@appellate-brief.com

### Verification of Plaintiffs

I, Jeffrey Spinner, Bill Pompliano, and Samantha Schwartz, declare as follows:

1. I am the Plaintiff in the present case, over the age of 18 years old, a citizen of the United States of America, and a resident and citizen of the State of New York.

2. I am the owner of the household goods and property at issue in the complaint and the shipper of the goods pursuant to an interstate moving Contract. I have personal knowledge of the facts set out in the foregoing *Verified Complaint*, and if called on to testify I would competently testify as to the matters stated therein.

3. Under 28 U.S.C. §1746, I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *First Amended Verified Complaint* are true and correct.

Dated: April 4, 2021

_____
Jeffrey Spinner

/s (see attached next page)
Samantha Schwartz

/s (see attached next page)
Bill Pompliano

H. An order and judgment awarding such other and further relief as this Court may deem just and proper and fair.

### TRIAL BY JURY IS DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all triable issues raised by this Complaint.

Dated: April 4, 2021

**LAW OFFICES OF SUSAN CHANA LASK**
/s Susan Chana Lask

_____
**Susan Chana Lask, Esq.**
*Attorneys for Plaintiffs and
the purported class*
**244 Fifth Avenue, Suite 2369
New York, NY 10001**
917-300-1958
scl@appellate-brief.com

### Verification of Plaintiffs

I, Jeffrey Spinner, Bill Pompliano, and Samantha Schwartz, declare as follows:

1. I am the Plaintiff in the present case, over the age of 18 years old, a citizen of the United States of America, and a resident and citizen of the State of New York.

2. I am the owner of the household goods and property at issue in the complaint and the shipper of the goods pursuant to an interstate moving Contract. I have personal knowledge of the facts set out in the foregoing *Verified Complaint,* and if called on to testify I would competently testify as to the matters stated therein.

3. Under 28 U.S.C. §1746, I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *First Amended Verified Complaint* are true and correct.

Dated: April 4, 2021

/s (see page before this as signed)
Jeffrey Spinner

_____
Samantha Schwartz

_____
Bill Pompliano

18